UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER MARSALISI,

               Plaintiff,

     - against -

NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS AND JOINERS OF AMERICA,

               Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/21/2022

**20 Civ. 1806 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

    Plaintiff Peter Marsalisi ("Marsalisi") brings this action against the defendant New York City District Council of Carpenters and Joiners of America ("District Council") alleging violations of Section 101(a)(2) ("Section 101(a)(2)"), 102 ("Section 102"), and 609 ("Section 609") of the Labor Management Reporting and Disclosure Act ("LMRDA"), and Section 215 ("Section 215") of the New York Labor Law ("NYLL"). (<u>See</u> "Amended Complaint" or "AC," Dkt. No. 19.) On November 17, 2021, the District Council filed a pre-motion letter expressing its intent to move for dismissal of the Amended Complaint, which the Court construes as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] (<u>See</u> "Motion" or "Mot." Dkt. No. 23.) On December

---

[1]  <u>See</u> <u>Kapitalforeningen Lægernes Invest v. United Techs. Corp.</u>, 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming the district court's ruling deeming the exchange of letters as the motion itself).

1

1, 2021, Corrigan filed his pre-motion letter opposing the District Council's Motion. (See "Opposition" or "Opp'n," Dkt. No. 16.) For the reasons stated below, the Motion is **GRANTED**.

## I. BACKGROUND

A. FACTS[2]

The District Council is a regional body for the United Brotherhood of Carpenters and Joiners of America ("UBC"), which is one of North America's largest building trade unions. The District Council is an unincorporated association of nine individual labor unions. The current head of the District Council is Executive Secretary-Treasurer Joseph Geiger ("Geiger"). Geiger was a member of the Timbermen, Hod Hoist Carpenters, Core Driller and United Brotherhood Helpers Local 1536 ("Local 1536"), which was a constituent member within the District Council. Local 1536 eventually merged with another union to form Local 1556.

In 1994, the District Council and United States entered into to a consent decree ("Consent Decree"), which addressed alleged violations of the Racketeering Influenced and Corrupt Organizations Act. See Consent Decree, United States v.

---

[2] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Federal Rule of Civil Procedure 12(b)(6) and explained in Section II, infra.

2

District Council of New York City & Vicinity of the United Bhd. of Carpenters & Joiners of Am., No. 90 Civ. 5722 (S.D.N.Y. Mar. 4, 1994), Dkt. No. 410. The Consent Decree created an Investigations and Review Officer ("IRO"), with significant authority to supervise the District Council and ensure compliance with the Consent Decree. On November 18, 2014, the Court approved a stipulation between the United States and the District Council, which modified the Consent Decree by replacing the IRO with an Independent Monitor, which had more limited oversight authority. The Court appointed Glen G. McGorty as the Independent Monitor. Since that time, the Court has approved stipulations between the District Council and the United States to extend the Independent Monitor's supervision.

  From 1991 to 2012, Marsalisi was a member of the New York Police Department. From 2011 to 2015, he was a general contractor in the New York City Carpenters Union, Local Union 157. In January 2015, Marsalisi was hired as a "carpenter investigator" with the District Council's Office of the Inspector General ("OIG"). The OIG had six investigators, four of whom were also carpenter investigators, and two of whom were former law enforcement officers but not carpenters. As an investigator, Marsalisi was responsible for a range of investigations, including violations of the District

Council's collective bargaining agreements, allegations of corruption, and surveilling District Council members to determine if they had contact with organized crime.

The District Council's Inspector General was Scott Danielson ("Danielson"), and the Deputy Inspector General was Patrick Kennedy ("Kennedy"). At some point during the relevant time period, Danielson was removed as Inspector General, and Kennedy became Interim Inspector General. Marsalisi alleges that Geiger, Danielson, and Kennedy worked together to thwart corruption investigations. The Amended Complaint identifies six investigations that Marsalisi conducted, and which Danielson or Kennedy allegedly took away from him or told him to stop investigating altogether. Marsalisi spoke to either Danielson, Kennedy, or the District Council President, Paul Capurso, about these investigations.

Marsalisi was ultimately terminated on October 6, 2017, which was allegedly in retaliation for his continued efforts to investigate allegations of corruption. His termination was allegedly part of the District Council's practice of intimidating and retaliating against dissidents. In support of this allegation, the Amended Complaint references Maddalone v. Loc. 17, United Bhd. of Carpenters & Joiners of Am., 152 F.3d 178, 184 (2d Cir. 1998), in which the Second Circuit found that the plaintiff adequately stated a Section

4

101(a)(2) claim based on allegations that the President of the District Council ordered the firing of any members, including the plaintiff, who attended a union demonstration. Marsalisi further alleges that Peter Corrigan ("Corrigan"), a business agent for the New York City (High Rise) Concrete Carpenters, Local 212 ("Local 212"), was terminated for opposing Geiger on several issues, and that Corrigan's termination was meant as a message to other union members to stay silent about corruption. According to Marsalisi, another OIG investigator, Michael Donnelly ("Donnelly"), was "forced out" for investigating a "Geiger crony." (AC ¶ 70.)

B. PROCEDURAL HISTORY

On February 28, 2020, Marsalisi initiated this action against the District Council and the UBC. (See Dkt. No. 1.) Consistent with the Court's Individual Practices, on March 26, 2020, the District Council wrote to Marsalisi regarding an anticipated motion to dismiss the complaint under Rule 12(b)(6). (See Dkt. No. 10.) Marsalisi filed his response on April 1, 2020, arguing that his employment as a carpenter investigator was intertwined with his rights as a member of the District Council, but he would amend the complaint to further support his LMRDA claim. (See Dkt. No. 11.)

Over a year and a half later, on October 14, 2021, the Court directed the parties to provide an update as to the

status of the litigation and Marsalisi's intention to amend the complaint. (See Dkt. No. 14.) On November 3, 2021, Marsalisi filed the Amended Complaint, (see AC), and voluntarily dismissed the UBC as a defendant, (see Dkt. No. 17). Further in line with the Court's Individual Practices, on October 21, 2021, the District Council filed the Motion, setting forth its grounds for dismissing the Amended Complaint. (See Mot.) Marsalisi filed the Opposition on December 1, 2021, after the Court directed him to respond to the Motion. (See Opp'n.) The Court now resolves the Motion on the basis of the letters and material in the record. See Kapitalforeningen, 779 F. App'x at 70 (affirming the district court's ruling deeming the exchange of letters as the motion itself).

## II.   LEGAL STANDARD

To survive a motion to dismiss, pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if

6

the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, if the factual allegations sufficiently "raise a right to relief above the speculative level," then a court should not dismiss a complaint for failure to state a claim. Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is to "assess the legal feasibility of the complaint, not . . . the weight of the evidence which might be offered in support thereof." In re Columbia Pipeline, Inc., 405 F. Supp. 3d 494, 505 (S.D.N.Y. 2019) (quoting Eternity Glob. Master Fund ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004)). A court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." Dane v. UnitedHealthcare Ins., 974 F.3d 183, 188 (2d Cir. 2020).

### III.   DISCUSSION

A. LMRDA CLAIMS

1. Section 101(a)(2)

Marsalisi claims that the District Council violated Section 101(a)(2) of the LMRDA by retaliating against him for investigating allegations of corruption within the District Council. (See AC ¶¶ 97-141, 158-72; Opp'n at 2.) Section

7

101(a)(2) provides, in relevant part, that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views . . . ." 29 U.S.C. § 411(a)(2).[3] Congress intended this provision to "protect union members from oppressive union leadership while preserving the union's right to adopt reasonable rules of governance." Sampson v. Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am., No. 10 Civ. 8120, 2012 WL 4471535, at *3 (S.D.N.Y. Sept. 27, 2012) (quoting Messina v. Local 1199, SEIU, Nat'l Health & Human Serv. Emps. Union, AFL-CIO, 205 F. Supp. 2d 111, 118 (S.D.N.Y. 2002)).[4] In essence, Section 101(a)(2) safeguards union democracy by ensuring members have the right to freedom of speech and assembly, while also being safe from retaliation for exercising that right. See Maddalone, 152 F.3d at 183 ("Section 101(a)(2) protects union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities.")

---

[3] Pursuant to Section 102 of the LMRDA, there is a private right of action for Section 101(a)(2) violations. See 29 U.S.C. § 412.

[4] See also Kazolias v. IBEWLU 363, 806 F.3d 45, 51 (2d Cir. 2015) ("The LMRDA was enacted 'to encourage democratic self-governance in unions' as well as 'to correct widespread abuses of power and instances of corruption by union officials.'" (quoting Franza v. Int'l Bhd. of Teamsters, Local 671, 869 F.2d 41, 44 (2d Cir. 1989))).

8

To state a Section 101(a)(2) claim, a plaintiff must establish the following: "(1) his conduct constituted free speech under the LMRDA; (2) that the speech was a cause for the Union taking action against him; and (3) damages." Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., No. 17 Civ. 4730, 2019 WL 1228056, at *24 (S.D.N.Y. Mar. 15, 2019) (quoting Leavey v. Int'l Bhd. of Teamsters-Theatrical Teamsters Loc. Union No. 817, No. 13 Civ. 0705, 2015 WL 5802901, at *8 (S.D.N.Y. Oct. 5, 2015)). Section 101(a)(2) protects speech made in "the context of the union democratic process, i.e. political speech *primarily addressed to other union members*, rather than free speech at large." Leavey, 2015 WL 5802901, at *9 (quoting Helmer v. Briody, 759 F. Supp. 170, 176 (S.D.N.Y. 1991)). Complaints addressed only to union leaders or supervisors are not protected by the LMRDA. See Grant v. Commc'ns Workers of Am., Local 1101, No. 16 Civ. 9553, 2017 WL 6000605, at *5-6 (S.D.N.Y. Dec. 1, 2017) (finding complaint "fails to plead sufficient facts suggesting that [p]laintiff's complaints to union officials were ever communicated to other union members"); Leavey, 2015 WL 5802901, at *9 (dismissing LMRDA claim where plaintiff "failed to present any evidence that his complaints, letters, and grievances, or the substance thereof, were communicated to other union members").

9

As a general rule, however, Section 101(a)(2) does not protect a union member's status as a union employee or appointed officer. See Finnegan v. Leu, 456 U.S. 431, 438 (1982); Ulrich, 2019 WL 1228056, at *25. The Second Circuit recognized a rare exception to this rule "where the removal of a union officer was part of 'purposeful and deliberate attempt . . . to suppress dissent within the union.'" Maddalone, 152 F.3d at 184 (quoting Schonfeld v. Penza, 477 F.2d 899, 904 (2d Cir. 1973)). This rare exception requires a plaintiff to "present 'clear and convincing proof' that her dismissal was 'part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out.'" Id.

"The question is whether the action 'is merely an isolated act of retaliation for political disloyalty or is instead' a broad overall scheme to suppress dissent." Sampson, 2012 WL 4471535, at *4 (quoting Franza, 869 F.2d at 45). Courts have "allowed such claims to go forward where the removal of an officer or employee stemmed from longstanding and well-documented patterns of harassment and intimidation." Maddalone, 152 F.3d at 184. But a union's actions against an individual member are cognizable "only if that individual adequately pleads that he has become 'a symbol for a movement within the rank and file members,' so that 'discipline of

10

that person could be considered threatening to the exercise of Title I rights by union members generally.'" Dilacio v. N.Y.C. Dist. Council of the United Bhd. of Carpenters & Joiners of Am., 593 F. Supp. 2d 571, 583 (S.D.N.Y. 2008) (quoting Franza, 869 F.2d at 45).

The Amended Complaint does not allege that Marsalisi engaged in speech protected by Section 101(a)(2). Marsalisi "routinely discussed conflicts of interest, cronyism, nepotism, and incompetence" with supervisors in the OIG, and he discussed specific investigations with District Council supervisors and the OIG. (See AC ¶¶ 97, 102, 112, 120, 128.) Marsalisi and other OIG staff also participated in the Independent Monitor's investigation of the OIG. (See id. ¶¶ 142-45). But allegations about conversations with union leadership are insufficient to establish that Marsalisi ever spoke to other union members regarding his complaints about corruption. See Ulrich, 2019 WL 1228056, at *23-25 (finding that an allegation that "general union membership was aware" of complaints was insufficient to state an LMRDA claim because plaintiff did not allege he spoke to other union members); Grant, 2017 WL 6000605, at *6 (dismissing claim where plaintiff did not allege facts that complaints to union officers were relayed to other union members); Leavey, 2015 WL 5802901, at *9 (concluding that complaints solely

11

addressed to union leadership were not protected under the LMRDA).

To adequately support an LMRDA claim, Marsalisi must also allege that his termination as a "carpenter investigator" — i.e., a union employee — was part of a general scheme to suppress dissent. Marsalisi relies, in part, on general allegations about Maddalone to establish a long-standing history of union leadership intimidating and firing union dissidents. (See AC ¶ 147.) The events in Maddalone occurred in January 1995, which is more than twenty years before Corrigan's termination. See 152 F.3d at 182. Marsalisi fails to allege any facts that connect his termination, or Corrigan's, to the general allegations about the decades-old conduct at issue in Maddalone. See Rodriguez v. Int'l Bhd. of Teamsters, AFL-CIO, No. 98 Civ. 8849, 1999 WL 816182, at *3 (S.D.N.Y. Oct. 13, 1999) (finding plaintiff failed to invoke the exception to Section 101(a)(2) where allegations related to conduct predating the LMRDA and were "untied to anything particular regarding plaintiff").

In support of his claim, Marsalisi also relies on the termination of a union business agent, Corrigan, and another OIG investigator, Donnelly. Corrigan was allegedly terminated "in retaliation for opposing Geiger on a whole range of issues." (AC ¶ 149.) While Donnelly was allegedly "forced out

12

because, among other things, he had investigated Geiger crony Brian McLaughlin for making prohibited non-Out of Work List (OWL) job referrals." (Id. ¶ 70.) The broad and vague allegations that Corrigan was terminated for opposing Geiger "on a whole range of issues," and that Donnelly was "forced out" for investigating a "Geiger crony," are unsupported by any facts stated in the Amended Complaint. At bottom, these allegations do not bolster Corrigan's allegation of the requisite long-standing history of the union leadership suppressing dissent within the District Council. Maddalone, 152 F.3d at 185.

   Furthermore, Marsalisi fails to allege that he became a symbol among the union membership's rank and file. Marsalisi does assert that he spoke to his supervisors and to the Independent Monitor about his investigations. (See AC ¶¶ 97, 102, 112, 120, 128, 142-45.) But he does not allege that he ever spoke to other union members about his attempts to investigate corruption, or that other members viewed him as a symbol of a movement within the District Council. Without more, Marsalisi does not adequately allege he was a "symbol of a movement," so that terminating him "could be considered threatening to the exercise of Title I rights by union members generally." Dilacio, 593 F. Supp. 2d at 583 (quoting Franza, 869 F.2d at 45); Sampson, 2012 WL 4471535, at *4.

13

For the above reasons, Marsalisi's Section 101(a)(2) claim is dismissed.

2. Section 609

Marsalisi also brings a claim under Section 609 of the LMRDA. Section 609 makes it "unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter." 29 U.S.C. § 529. In essence, Section 609 prohibits unions from retaliatory disciplining members for exercising the rights set forth in Section 101. See id.

Similar to Section 101(a)(2), "as a general rule, discipline and removal 'from appointive union employment is not within the scope of those union sanctions expressly prohibited by [Section] 609." Sampson, 2012 WL 4471535, at *5 (quoting Finnegan, 456 U.S. at 439). But an exception exists for plaintiffs who can establish that they were disciplined as "part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." Id. (quoting Maddalone, 152 F.3d at 184).

For the reasons stated above, Marsalisi cannot establish that he was disciplined for engaging in protected speech or

that his termination as a Local 212 business agent was part of a deliberate retaliatory scheme to suppress dissent within the District Council. See Sampson, 2012 WL 4471535, at *5 (dismissing Section 609 claim where plaintiff failed to allege a Section 101(a)(2) claim). Therefore, Marsalisi's Section 609 claim is dismissed.

B. NYLL CLAIM

Marsalisi also brings a state law claim, under Section 215 of the NYLL, on the grounds that he was terminated because he made complaints about and attempted to investigate corruption within the District Council. (See Mot. at 3; AC ¶¶ 97-145, 173-89; Opp'n at 2-3.) The Court does not reach the merits of this claim because dismissal it declines to exercise its supplemental jurisdiction over these state law claims.

Federal courts have supplemental jurisdiction over state law claims that are closely related to claims over which they have original jurisdiction. See 28 U.S.C. § 1367(a). But a court may decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction." See id. § 1367(c). The parties did not raise the issue of subject matter jurisdiction, but the Court retains the power to determine the issue on its own. See Fed R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of

15

the subject matter, the court shall dismiss the action."); FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (noting the court has an independent duty to examine its basis for jurisdiction).

Marsalisi's Section 215 claim is based on the same facts as his Section 101(a)(2) claim, and since all the federal claims at issue here are dismissed, the Court declines to exercise jurisdiction over a purely state law claim between New York parties. See 28 U.S.C. § 1367(c)(3); Valencia rel Franco v. Lee, 316 F.3d 299, 304-06 (2d Cir. 2003). Therefore, Marsalisi's Section 215 claim is dismissed for lack of subject matter jurisdiction.

### ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion from defendant New York District Council of Carpenters and Joiners of America to dismiss the Amended Complaint of plaintiff Peter Marsalisi (Dkt. No. 23) is **GRANTED**. The Clerk of Court is directed to terminate all pending motions and close the case.

**SO ORDERED.**

Dated:     April 21, 2022
           New York, New York

                                         _____
                                              Victor Marrero
                                                 U.S.D.J.